## Case No. 1,517.

### BLANCHARD v. SPRAGUE.

[3 Sumn. 279;[1] 1 Law Rep. 223; 1 Fish. Pat. Rep. 14.]

Circuit Court, D. Massachusetts. May Term, 1838.

STATUTES—CONSTRUCTION—CORRECTION OF ERROR —MISNOMER—DATE—MATERIAL DESCRIPTION.

1. In construing an act of congress, if there be a mistake apparent upon the face of the act, which may be corrected by other language in the act itself, the mistake is not fatal.

2. No mere misnomer in the name of a person, or a corporation, named in the act is fatal, if the person or corporation really intended can be collected from the terms of the act; but where the descriptive words constitute the very essence of the act, unless the description is so clear and accurate as to refer to the particular subject intended, and to be incapable of being applied to any other, the mistake is fatal.

3. There is no case, where a court, in the construction of a statute, has substituted other words and other dates in order to maintain an act, making erroneous references to things aliunde.

4. By act of congress of 30th June, 1834 [6 Stat. 589, c. 213], it was enacted, "That there be granted, &c., unto Thomas Blanchard, &c., for the term of fourteen years from the twelfth day of January, 1837, the exclusive privilege of making, constructing, using, and vending to others to be used, his invention of a 'machine for turning or cutting irregular forms,' a description of which is given in schedule or specification annexed to letters patent, granted to the said T. B. for the said invention, on the twelfth of January, 1820." Now there were no such letters patent of the twelfth of January, 1820, as are referred to in this act; but letters patent of the twentieth January, 1820; and the words of description therein were, "an engine for turning or cutting irregular forms," instead of "a machine for turning or cutting irregular forms." Held, that the court could not correct

[1] [Reported by Hon. Charles Sumner.]

this variance, so as to give validity to the letters patent, under the act of 1834.[2]

STORY, Circuit Justice. On the 30th of June, 1834 [6 Stat. 589, c. 213], congress passed an act, entitled "An act to renew the patent of Thomas Blanchard," by which it was enacted, "That there be and is hereby granted unto Thomas Blanchard, a citizen of the United States, his heirs, assignees, and legal representatives, for the term of fourteen years from the twelfth day of January, in the year eighteen hundred and thirty-seven, the full and exclusive right and privilege of making, constructing, using, and vending to others to be used, his invention of 'a machine for turning or cutting irregular forms,' a description of which is given in a schedule or specification annexed to letters patent, granted to the said Thomas Blanchard, for the said invention, on the twelfth of January, in the year eighteen hundred and twenty." Then follows a proviso and some other enactments, not necessary to be mentioned. In pursuance of this act, the letters patent, on which the present suit is founded, were granted to the plaintiff.

In point of fact, no letters patent were ever granted to the plaintiff, (Thomas Blanchard,) dated the twelfth day of January, A. D. 1820; but certain letters patent were granted to him, which will be immediately mentioned, on the twentieth day of January in the same year. By these last letters patent, after reciting "that Blanchard had invented a certain new and useful improvement, being an engine for turning or cutting irregular forms, out of wood, iron, brass, or other material or substance, which can be cut by ordinary tools, called Blanchard's self-directing machine," they proceeded to grant to him, for the term of fourteen years from the sixth day of January, A. D. 1819, the full and exclusive right, &c. of such invention, a description whereof was given in the schedule annexed to the letters patent. These letters patent were granted upon the surrender of certain other letters patent, which had been granted to Blanchard on the

[2] [An act was passed February 6, 1839 (6 Stat. 748), to amend and carry into effect the act of June 30, 1834.]

sixth day of September, A. D. 1819, for a new and useful improvement, "being a machine for turning gunstocks, tackle and shipping-blocks, and may be applied to turning or forming wood, metal or other material into any regular or irregular form, provided it be such that the whole surface, as it revolves, may come in contact with the friction wheel;" and the last letters patent granted the exclusive right for the term of fourteen years from the sixth day of September, 1819.

It is apparent from this statement, in the first place, that there are no such letters patent of the date of the 12th day of January, A. D. 1820, as are referred to in the act of 1834; and, in the next place, that the other descriptive words of the act are not exactly those of the letters patent of the twentieth day of January, A. D. 1820. In the act of 1834, the words are, "a machine for turning or cutting irregular forms;" in the letters patent of the twentieth day of January, 1820, the words are, "an engine for turning or cutting irregular forms;" and the remaining descriptive words, "out of wood, iron, brass, or other material or substance, which can be cut by ordinary tools, called Blanchard's self-directing machine," are left out. The question is, whether these variances are fatal, or are mere formal errors, which the court may, upon construing the act, correct and rectify, so as to give validity to the present letters patent under the act.

Now, I agree, that, in construing an act of congress, if there be a plain mistake apparent upon the face of the act, which may be corrected by other language in the act itself, the mistake is not fatal. I agree, also, that a mere misnomer in the name of a person or corporation named in the act, if the person really intended can be collected from the terms of the act, is also not a fatal mistake. The latter was the case of Chancellor of Oxford, 10 Coke, 54, 57, cited also in Com. Dig. "Parliament," R. 10, in which it was held, that where, by a statute, in case of Popish recusancy, the right of presentation was given to the chancellor and scholars of the University of Oxford, the description was sufficient to express the meaning of the makers of the act, that the corporation of the University of Oxford (whose technical name is the Chancellor, Master, and Scholars of the University of Oxford), which has a chancellor and scholars, shall take it, and no other corporation shall take it. On that occasion the court is reported by Lord Coke to have declared, that, in "an act of parliament, misnomer of a corporation, when the express intention appears, shall not avoid the act, no more than in a will; for parliamentum testamentum et arbitramentum are to be taken according to the mind and intentions of those, who are parties to them. And, therefore, when the description of a corporation in an act of parliament, or in a will, is such,

that the true corporation intended is apparent, and it is impossible to be intended of any other corporation, although the right name of the corporation, (which is requisite to be expressed in grants and deeds,) is not precisely followed, yet the act of parliament will and shall take effect." But in the case put, the real person or corporation intended to take is supposed to be perfectly clear upon the face of the act, and not to be made out by intendment from circumstances aliunde.

The difficulty in the present case lies somewhat deeper. The descriptive words constitute the very essence of the patent, which is to be renewed for fourteen years. Unless, then, the description is so clear and accurate as to refer to a particular patent, and to be incapable of being applied to any other, the mistake is fatal. If there were here a mistake merely in the date, that might be cured by the other accompanying descriptive words of the subject matter of the patent. On the other hand, if the date were correct, that might cure any inaccuracy in the other descriptive words. Here neither the one nor the other is accurately given. The patent referred to in the act, is a patent of the date of the twelfth day of January, 1820. None such exists. The other descriptive words are not accurate. They purport, in the act, to be between inverted commas and a verbatim transcript. "A machine for turning or cutting irregular forms." The correspondent words of the patent of the 20th of January, 1820, are "An engine for turning or cutting irregular forms." Assuming that the words "engine" and "machine" are in all cases words of an equivalent meaning (which may well be doubted), it is certain that they are not the same words, and cannot be treated as such, when they constitute a matter of description substantial to the case. If forgery were alleged in an indictment of an instrument, purporting to contain a description of a contract respecting a machine, it would be a fatal variance to allege that it purported to be of an engine. But this is by no means the chief difficulty. The descriptive words, in the act of 1834, fall far short of those in the patent of 1820. In the first, they are absolute and unlimited; in the last, they are qualified and restrained, by the very important descriptive words, "out of wood, &c., &c., which can be cut by ordinary tools, called Blanchard's self-directing machine." The purport is, therefore, not necessarily the same; and in truth the machines described may not be identical in all respects, though they may be so for many purposes. So that, to say the least of the matter, there is not such perfect certainty, as to the identity of the patent referred to in the act of 1834, looking merely to its terms, as to preclude all doubt. And, indeed, many of the descriptive words used in the patent of the sixth day of September, 1819, manifestly apply to a machine of the same nature, that is,

to a machine for turning or cutting irregular forms. It seems conceded, that the patent of 1819 was in substance designed to cover the same invention as that included in the patent of the 20th of January, 1820, as the former was surrendered for the very purpose of obtaining the latter.

In the present case, then, the mistake in the act of 1834 is not cured by any other words apparent in the act. The reference is to a patent, as the subject of the act, which, according to the terms used, does not exist. And the only means of correcting the mistake is by an argument and inference, that the patent of the 20th of January, 1820, might have been intended, as approaching nearest to the terms; and that, otherwise, the act would be a mere nullity. I have not been able to find a single case, where it has been held, that the court may substitute other words and other dates, in order to maintain an act making erroneous references to things aliunde. In the case of Keene v. U. S., 5 Cranch [9 U. S.] 304, the supreme court of the United States declined to enforce the provisions of the 35th section of the act of 18th of February. 1793, c. 8 [1. Stat. 317], upon the ground, that that section referred to an act of congress by its title, giving it, and that no act could be found with a correspondent title, although there were two acts of congress, whose titles nearly resembled it, and one of them was identical with it with a slight transposition of the words.

In construing the act of 1834, it is not unimportant also to remark, that the act secures Blanchard's patent for the term of fourteen years, from the twelfth day of January, 1834, the very day referred to as the date of the original patent; so that it is apparent, that the supposed date of the latter was a governing point in congress, as to the extent of time of the renewal. Now, it is not pretended, that the court can treat this date also as a mistake, and carry forward the renewal for fourteen years, from the twentieth day of January, 1834. And yet, how can the court say, that if the real date had been known by congress to be the twentieth day of January, 1820, the renewed patent would not have been for fourteen years, from the twentieth day of January, 1834? I confess myself a good deal distressed by this consideration; for, under the circumstances, the correction of the mistake, as to the date of the patent, will require the court either to correct the date as to the renewed term, or to intend, that congress in the one date had no regard whatever to the other date, which would be, not only to presume a fact without evidence, but I may say to presume it against the obvious purport of the words of the act. It seems clear, that congress did intend, that the renewed patent should take effect, immediately from and after the expiration of fourteen years, from the grant of the former patent; probably

under a supposition, that the patent was originally granted for fourteen years.

On the whole, although I cannot doubt, as a private man, what patent was intended to be renewed by congress; yet I do feel great doubt, whether, judicially, I am at liberty to depart from the very words of the act of congress, to correct a mistake, not apparent on the face of the act, where the mistake, when corrected, will still leave another doubt behind it, and that is, whether I do not by such a correction depart from the intention of congress, manifested in the other parts of the act. I say, that I feel great doubt; and I cannot put the case more strongly, because I have not a resolute confidence in my own opinion on the point. But my doubt, such as it is, is decisive for the defendant, since the plaintiff must prevail by his own strength; and unless this doubt is removed, he cannot press for a judgment.

If the learned counsel for the plaintiff should, after this determination, incline to take the case to the supreme court for a final decision, I am sure that my learned brother, the district judge, will unite with me in certifying the same to the supreme court, as upon a division of opinion.

[NOTE. For other cases involving this patent, see note at end of Blanchard v. Reeves, Case No. 1,515, and note at end of Blanchard's Gun-Stock Turning Factory v. Warner, Id. 1,521. For other cases between the same parties, see Cases Nos. 1,518 and 1,516.]