### DEDERICK v. CASSELL and others.*

*(Circuit Court, E. D. Pennsylvania. October 6, 1881.)*

1. PATENT—REISSUE—DIVISION AND ENLARGEMENT OF CLAIMS—WHAT IS NOT "NEW MATTER."

   While such extensive division and enlargément of claims in reissues as tends to confusion and litigation is reprehensible, it affords no legal ground of objection to the reissues unless "new matter" is introduced, and nothing plainly embraced in the specifications, model, or drawings is "new matter."

2. SAME—SUBORDINATE COMBINATIONS NOT CLAIMED IN ORIGINAL PATENT.

   While language may be found in *Gill v. Wells*, 22 Wall. 1, and a few other cases, which, standing alone, might justify a belief that where a general combination embraces minor subordinate combinations not claimed in the original patent, a subsequent introduction of claims for the latter is invalid, yet such a conclusion cannot be reconciled with what has been decided elsewhere, both before and since.

3. SAME—PRESUMPTION AS TO VALIDITY.

   A reissue is entitled to a presumption in its favor, and to justify its rejection, on the allegation of "new matter," it must clearly appear that such new matter has been introduced.

4. SAME—COMBINATION—INFRINGEMENT.

   A new combination is infringed whenever another employs substantially-the same combination in plan and elements, operating in the same manner and producing substantially the same result. The doctrine of equivalents, with slight modification, applies with as much force to such an invention as to any other.

5. SAME—IMPROVEMENTS IN BALING PRESSES.

   Claims Nos. 3, 5, 7, 8, 10, and 11 of reissue 8,130, No. 3 of reissue 8,316, Nos. 3 and 11 of reissue 7,983, No. 6 of reissue 8,292, and No. 1 of reissue 8,296, for improvements in baling-presses, *held* valid, and respondent's machine *held* to be an infringement.

6. SAME.

   Claims Nos. 4 and 6 of reissue 8,130, No. 2 of reissue 8,316, No. 5 of reissue 7,983, Nos. 6, 7, 8, 10, and 11 of reissue 8,312, and Nos. 2 and 5 of reissue 8,292, *held* invalid.

Hearing on Bill, Answer, and Proof.

Bill for injunction against infringement of reissues of patents issued to complainant for improvements in baling-presses. The answer denied novelty, alleged that the reissues contained "new matter," and denied infringement. The facts are sufficiently stated in the opinion.

*L. Hill,* for complainant.

*C. E. Marsh, J. Pusey,* and *Collier & Bell,* for defendants.

BUTLER, D. J. The suit embraces seven patents, for "improvements in baling-presses," numbered 8,130, 8,316, 7,983, 8,312, 8,292, 8,296, and 187,220. The last named, however, the plaintiff has withdrawn.

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

The first and second are reissues derived from original 132,566, dated October 29, 1872; the third and fourth are reissues derived from original 132,639, of same date as 132,566; the fifth is a reissue of original 151,477, dated June 2, 1874, and the sixth a reissue of original 177,216, dated May 9, 1876. As the case now stands the respondent is charged with infringing 22 claims, being the third, fourth, fifth, sixth, seventh, eighth, tenth, and eleventh of 8,130; the second and third of 8,316; the third, fifth, and eleventh of 7,983; the sixth, seventh, eighth, tenth, and eleventh of 8,312; the second, fifth, and sixth of 8,292; and the first of 8,296. The fourth and sixth of 7,983, and the fourth of 8,296, included in the bill, have been withdrawn; and the fifth of 8,292, which was not so included, has been introduced by agreement.

The answer denies the validity of the several patents and claims, and the charge of infringement.

The issues raised can only be disposed of intelligently, by considering each patent and claim separately. It is not necessary, however, to state at large our reasons for the disposition made of them. To do so would require a written analysis of the various machines and devices exhibited to prove anticipation, and a comparison of their several parts with the respective claims of the plaintiff, as well as a dissertation on the former state of the art, which would involve much useless labor and much more time than can be spared for the purpose. The questions of law are neither new nor difficult; and the questions of fact are such as commonly arise in patent cases. I shall, therefore, do little more than state conclusions. A few considerations, common to all the patents, and many of the claims, can be disposed of most profitably, at the outset.

As has been stated, the original letters were surrendered, and reissues obtained, (for separate minor, or subordinate, combinations as respects 132,566 and 132,639,) with the several claims of each original divided and enlarged. While this extensive division and enlargement of claims (induced, probably, by a nervous apprehension of future difficulties) tends to confusion and litigation, and is therefore reprehensible, it affords no legal ground of objection to the reissues, unless "new matter" has been introduced. The introduction of "new matter" is forbidden by the statute. Nothing, however, plainly embraced in the specifications, model, or drawings, is regarded by the courts as "new matter:" *Bentz* v. *Elias*, 6 O. G. 117; *Thomas* v. *Manuf'g Co.* 16 O. G. 541; *Glue Co.* v. *Upton*, 6 O. G. 830; *Aultman* v. *Holley*, 11 Blatchf. 317; *Smith* v. *Goodyear*, 11 O. G. 246;

s. c. 11 Otto, 486.  While language may be found in *Gill* v. *Wells,* 22 Wall. 1, and a few other cases, which, standing alone, might justify a belief that where a general combination embraces minor, subordinate combinations, not claimed in the original patent, a subsequent introduction of claims for the latter, is invalid.  Such a conclusion, however, cannot be reconciled with what has been decided elsewhere, both before and since : *Henry* v. *Nelson,* 12 O. G. 753 ; *Kerosene Lamp Co.* v. *Littell,* 13 O. G. 1009 ; *Stevens* v. *Pritchard,* 10 O. G. 505 ; *Brown* v. *Selby,* 23 Wall. 181 ; *Seymour* v. *Morgan,* 11 Wall. 544 ; *Pearl* v. *Ocean Mills,* 11 O. G. 4 ; *Christman* v. *Ramsey,* 17 O. G. 95 ; *Sussell* v. *Spaeth,* 14 O. G. 274.  The patent, whether a reissue or an original, is entitled to a presumption in its favor: *Railroad Co.* v. *Stimpson,* 14 Pet. 448 ; *Stevens* v. *Pritchard,* 10 O. G. 505 ; *Rossner* v. *Anness,* 13 O. G. 870 ; *Smith* v. *Goodyear,* 5 O. G. 585.  To justify the rejection of a patent or its claims, therefore, on the allegation of "new matter" it must clearly appear that such matter has been introduced.  A careful examination of the originals and reissues involved in this case has not satisfied us that "new matter" has been introduced.

These patents are, principally, for new combinations.  A majority of patents granted in modern times, are for such inventions ; and they are none the less entitled to protection, and none the less valuable, on this account.  A new machine, or a new manufacture is thus produced, whereby new and useful results are obtained.  Such a machine is infringed whenever another employs substantially the same combination, in plan and elements, operating in the same manner and producing substantially the same result.  The doctrine of equivalents, with slight modification, applies with as much force to such an invention as to any other : *Gould* v. *Reese,* 15 Wall. 192 ; *Seymour* v. *Osborne,* 11 Wall. 556 ; *Gill* v. *Wells,* 22 Wall. 14, 15.  Where, however, there is a difference, not in form simply, but in substance,— a difference in plan or combination,—in short, a difference in invention, of course, the one machine will not infringe the other.  The old elements from which one individual has drawn are open to all.  It is the peculiar combination which one has effected that another shall not copy.  It is the substance of the combination, however, and not the form, that is to be regarded.  If the same plan, and substantially the same means of carrying it out, be employed, it is but copying.

That the plaintiff's press (considered as an entire machine) is the result of a new plan and new combination ; that invention was necessary to produce it, and that great benefit has resulted from its pro-

duction and use, we cannot doubt. An extended inquiry respecting the state of the art prior to its invention, in 1872, is unnecessary. The baling-presses employed for hay, up to that time, were of a primitive character. The upright press, principally used, consisted of a box or tube of about three by five feet in diameter, in which a platen or traverser moved, compressing the hay and forming the bale, by a single movement. While the hay was thus held in position, doors in the side of the box were opened and the bale was bound and removed. The platen was then drawn up, and the operation repeated. The bale rested on its side while within the box, and consequently was pressed and bound transversely. Longitudinal presses had been constructed, by laying the box or tube above described, upon its side, into which the hay was inserted through doors on top. After tramping, the doors were closed, and the platen moved forward until the hay was compressed, when they were opened, and the bale bound and removed. Beater-presses, referred to by the witnesses as in use to a limited extent, were similar to the two described, having a device, however, to supply the necessity for tramping while the box was being filled. For baling cotton, presses of similar construction, though somewhat more ingenious and complicated, were employed. None of the several machines referred to, however, were like the plaintiff's, either in plan or combination of parts, or capable of performing its functions. If it be true, as alleged by the defendant, that all the parts embraced in the plaintiff's press, may be found in the various devices previously used to compress hay, cotton, peat and clay, the plaintiff's right to the new combination which he constructed, would be none the less complete. It will not answer to say this required no invention, that any mechanic might have selected the parts and combined them. The same might be said with equal force in almost every instance in which a patent for combination is issued. The fact that no mechanic did select and combine the parts, and produce such a press, notwithstanding the great need for it, is a sufficient answer to the suggestion.

The invention consists in constructing a machine whereby hay may be pressed, baled and tied off in a straight tube, open at both ends, by a continuous operation, each bale completed being expelled by the process of forming another behind it, and all interruption from feeding and removing bales, thus avoided. Such a press was never before constructed, and such a result never before obtained. The press consists of—

"A horizontal tube, open at both ends; a ram or 'traverser' working back and forth rapidly in one end of the tube, by means of a sweep, crank and pitman,

which enabled the horse or other power to move forward continuously without stopping or reversing, and which caused the ram to make strokes or movements of fixed extent and equal power; an opening in the top of the tube, into which the hay was fed, one forkful at a time, so that each forkful would be thrust forward to a fixed distance by the next stroke of the ram, and thereby compacted into a vertical section of pressed hay; retaining-shoulders in the walls of the tube, at or near the forward limit of the movement of the ram, to keep the hay sections from expanding backward on the return stroke of the ram; grooved partitions, to be inserted between the bales and moved along in the tube with them, to separate one bale from another, and to facilitate the introduction of the bands; tie-slots in the sides of the tube, to enable the bands to be introduced, passed around the bales, and tied off without interrupting the feeding, pressing, and discharging operations; provision for adjusting the walls of the tube towards or from each other, to regulate the friction upon the sides of the bale; and a springing or yielding front face to the ram or 'traverser,' to prevent the hay from overlapping it and binding between its upper edge and the top of the tube."

This is the plaintiff's language, but, as a general description it is accurate. That the defendants' press infringes, we do not doubt. Whether all the plaintiff's claims are valid, and so infringed, is yet to be considered. But, looking at each press as a whole, and comparing the two, we find no material or substantial difference. Each has a crank-toggle and reciprocating traverser, a press-box and bale-chamber, with tying-slots and retaining-shoulders at its rear end; each builds up a bale of separately-compressed sections, and discharges it when formed, through the forward end, by means of additional charges, and each has the adjustable sides at the front of the bale-chamber to regulate the friction of the passing bale. In short, the hay is received, pressed and formed into bales, held in position, bound and discharged, by the two presses substantially in the same manner—practically by the same means and mode of operation, and with substantially the same result. Horizontal tying-slots are found on but one side of the defendants' (while the plaintiff's has them on both,) but a vertical slot or opening on the other, is substituted for passing the bands (the only office of tying-slots.) Neither this nor any other difference found, is deemed material. They are differences in form, that add no value to the machine. The defendants' will do nothing which the plaintiff's will not do as well and as expeditiously. The absence of advantage in the complicated method of passing the bands —rendered necessary by omitting the slots on one side—and the other differences in construction, might suggest the thought that these differences were resorted to in the hope of escaping responsibility for infringement.

Turning now to the several letters patent, and taking up the respective claims involved in their order, we find that of reissue 8,130 they are three, four, five, six, seven, eight, ten and eleven, which read as follows:

"(3) The slots I, in combination with the bale-chamber C, provided with shoulders, substantially for the purpose set forth. (4) The above-described method of successively ejecting finished bales from a press by means of additional charges of material forced within the chamber. (5) The procumbent or horizontal press-box and bale-chamber B C, constructed with a feed-orifice at the top, as at A, and provided with horizontal side-tying slots I, substantially for the purpose set forth. (6) A press for baling hay, cotton and other fibrous material that is bound into bales, so constructed, combined and operated that the hay is fed in or pressed at one end of the chamber and forced out at the other end by a common traverser and simultaneous operation, as set forth. (7) A press for baling hay, cotton and other fibrous material that is bound into bales, so constructed, combined and operated that the finished bale is forced out of one end of the chamber as the loose material is fed in or pressed at the other end by a common traverser and simultaneous operation, as set forth. (8) The traverser E, constructed with a contracting or yielding front, to wedge together when the hay overlaps it, substantially for the purpose set forth." "(10) The retaining-shoulder H, in combination with the bale-chamber C and traverser E, for the purpose set forth. (11) In a procumbent press, in which the hay and other loose material is pressed in sections into bales, the slots I, in combination with the press-case B C and traverser E, for the purpose set forth."

Of the above, three, five, seven, eight, ten and eleven are valid. The proofs sustain the presumption of novelty and utility. Eight is for an improved traverser; seven is for the complete machine; while the others are for minor or subordinate combinations embraced. That the traverser is new is admitted; that its novelty is useful, and involved invention, is quite clear. The novelty and utility of the completed machine, and the validity of the claim for it, have already been fully considered. The objection urged against some of the claims to minor combinations, that the parts do not co-operate or combine in action, does not seem to be sustained by the proofs. Six we find to be identical with seven, and the double claim cannot be sustained. Four, properly construed, is also identical with seven. It is for the *effect* produced by constructing and operating the *plaintiff's press.* It could only be infringed by doing this. The language,—the "above-described method,"—and the otherwise implied reference to the specifications, require the claim to be read as one for the *plaintiff's method of operating his press.* In *Blanchard* v. *Sprague,* 3 Sumn. 279, this construction was made where there was much less to justify it,

and it has been adopted in numerous other instances: *Stone* v. *Sprague*, 1 Story, 270; *Gray* v. *James*, Pet. C. C. R. 394; *Jones* v. *Pearce*, Webster, P. C. 123; *Blanchard Co.* v. *Warner*, 1 Blatchf. 209; *Railroad Co.* v. *Dubois*, 12 Wall. 47; *Clark* v. *Busfield*, 10 Wall. 133. If it were for a *method* independently of the plaintiff's press, it would be bad for want of novelty. The same method of ejecting substances out of presses—by successive charges of material behind—has been in use time out of mind. The presses for peat and brick, exhibited by the defendants, show it. That the substances were not hay, baled or unbaled, is not important. The *method* was the same; the application of it to other material would be but another use. The suggestion that the substance so ejected was not hay baled and ejected as the plaintiff does it, brings us back to the point at which we started, by illustrating that the claim is not for an independent process, but for the *plaintiff's, as performed by his particular machine,* involving his entire invention. In either view, however, the claim cannot be allowed.

Of reissue 8,316 the claims involved read as follows:

"(2) The combination of the sweep or horse-lever with the crank F and pitman L, for operating the traverser of a baling-press. (3) The crank or toggle L F, in combination with the traverser E, receiving-box B, and bale-chamber C, substantially as described."

Properly construed, these claims embrace the same matter. If the first were confined to the language in which it is expressed, it would probably have to be rejected for want of novelty; for it would thus seem to be for a new application of an ordinary horse-power, requiring no invention. That the plaintiff intended it to be so confined, is rendered quite probable by the insertion of the next claim—which involves the same matter, in combination with other elements of his press. The same combination, however, is incorporated in the first by necessary implication. It must therefore be rejected,—the second of the two being allowed, because of its greater perspicuity. There is no reason to doubt the novelty or utility of this claim, or to question its validity on any other account.

Of reissue 7,983, the claims involved are as follows:

"(3) In a horizontal baling-press, in which. the bales are compressed and ejected through the end, the bale-chamber D, constructed with tapering or adjustable sides, to regulate the resistance offered to the passage of the bale, for the purpose of compressing and hardening it, substantially as described." "(5) The press-head formed of the previously completed bale, substantially for the purpose set forth." "(11) The follower O, as the partition or separation between the finished and forming bale, as set forth."

The third, the proofs show to be a novel and patentable combination. We do not think any of the devices exhibited by the defendants, prove anticipation. Its utility cannot be questioned.—The fifth is invalid. The bale, claimed as the "press-head," forms no part of the patented machine. It is the product of the press—the result of its operation in use.—The eleventh—for the "follower O, as a partition," refers to the "follower O" described in the specifications. No valid objection to it is shown.

Of reissue 8,312, the claims involved read as follows:

"(6) The toggle G F, connected to the reciprocating traverser C, in combination with the press-case B D, provided with a yielding head or resistance, for the purpose set forth. (7) The press-box B, reciprocating traverser C, in combination with a bale-chamber, D, provided with a movable partition between the forming and finished bales. (8) The process of forming the bale within the chamber by means of a movable partition, the traverser, and the previously-compressed bale, substantially as described." "(10) In a baling-press, the crank, eccentric, or cam, or the toggle F G, in combination with the reciprocating traverser C, and baling-chamber B D, provided with a movable partition frame for the bales. (11) The bale-chamber D, provided with stationary retaining-shoulders, in combination with a movable partition for the bales."

The sixth differs from the third of 8,316 only in the last element named—"the yielding head of resistance"—and as this element is admitted to be the "finished bale," embraced in claim 5 of 7,983, which we have already considered and rejected, this claim also must be disallowed. The distinguishing feature of the seventh, eighth, tenth and eleventh, is the "movable partition" in the combination stated. If by this partition is meant a plain slide (a partition without grooves,) as the plaintiff's testimony, as well as the language employed to describe the device, would indicate, the claims are unjustifiable. No such partition is indicated in the specifications, drawings or model,—for the very good reason, no doubt, that its use would be impracticable in the press. The partition there shown is the grooved "follower O." The language of the specification is, "the follower O, with tying-grooves, is inserted in the press-box in the rear of the finished bale, and forced along with it," thus constituting a partition between the bales, and facilitating the passage of bands. In the original patent a single claim is founded on this, in the following words: "(10) The follower O, constructed with grooves on both sides, in combination with the bale-chamber," etc.

In the reissue 7,983 two claims are founded upon it, as follows: "(6) The follower O, constructed with grooves on both sides for the

ties, in combination with the bale-chamber," etc.; and "(11) The follower O, as a partition or separation between the finished and forming bale."

Whatever the plaintiff may have intended by the term "movable partition," as employed in the claims now under consideration, it must be held to refer to the "follower O," the only movable partition contemplated in the original application for a patent. The attempt to found four additional claims on this device, as here exhibited, is censurable. If the purpose was to vary the character of the device, it was an effort to expand the scope of the invention. If not this, it is a senseless, confusing, and therefore mischievous, multiplication of claims for the same subject-matter. Construing the term "movable partition" to mean the "follower O," everything embraced in these claims is fully covered by the sixth and eleventh, just referred to. Reading the latter in connection with the specifications and drawings (as we must,) they include every element and combination here embraced. The "process," as it is called, in the eighth, is simply the operation and effect of the plaintiff's press, with the "follower O" used in the manner set forth in the specifications. The claims are disallowed.

Of reissue 8,292, the claims involved read as follows:

"(2) In that class of horizontal presses in which the hay is fed and pressed in sections by a reciprocating traverser and crank, or toggle power, as set forth, the *loose or adjustable* sweep or horse-lever, for the purpose set forth." "(5) In that class of baling-presses in which the hay is fed and pressed in sections, a press-case provided with a *screen-bottom under the reciprocating traverser D,* and in combination with the same, for the purpose set forth. (6) In a baling-press in which the material is compressed in sections by a reciprocating traverser, the pressing devices so arranged and operated that the reaction or elasticity of the pressed material shall reverse the traverser without turning the horse-lever or sweep." .

Here, again, two of the claims—the second and sixth—embrace the same matter. Each is substantially for an arrangement of the power and pressing devices (such as is described in the specifications and shown in the model and drawings,) to prevent the reaction or rebound of the pressed material throwing the lever against the horses. The matter embraced is new and patentable, but the double claim cannot be allowed. While it may be a matter of indifference whether the one or the other be rejected, we will reject the second and allow the sixth. In the fifth the only element demanding consideration is "the screen-bottom" under the reciprocating traverser. The claim is not to the screen (and could not be, for this is a very old device,) but is

for placing it in the press-box under the traverser. It is for an improvement added to the press in 1874. A similar screen is found in the Wallen patent for "baling-presses," of 1872,—inserted in the bottom of the press-box, and partly, at least, under the traverser, or the space over which it passes, designed for the same use, and answering for the same purpose as in the plaintiff's. That it is less serviceable in the Wallen press is not important. This results not from any difference in the device, or its location in the box, or combination with the traverser or other parts of the press, but from the difference in the presses themselves, and in the methods of forming bales. In Wallen's the bale is formed in the press-box, into which the required quantity of hay is placed before any pressure is applied, thus affording but little opportunity for the escape of dust through the screen below; while in the plaintiff's the bale is formed in a separate chamber, into which each forkful of hay is pushed, as pitched in, thus allowing the dust of each in succession, to fall upon and pass through the screen. This difference, or peculiarity of construction in the plaintiff's press, does not aid his claim for the improvement under consideration. The press, as we have seen, is covered by previously-issued patents. He is entitled to no greater consideration as respects this improvement of it, than a stranger would have been, if he had made it. His claim can only be, as in terms it is, for adding a screen to the press previously constructed and patented, just as he did it. In this view it is plain that what he did was but copying what Wallen had done. There was nothing whatever new about it. The claim is therefore disallowed.

Of reissue 8,296, the only claim involved is the following: "(1) The press-case provided with one or more apertures, O, for the purpose set forth."

We do not find any valid objection to this claim, which is, as the one preceding was, for an improvement. It was a useful addition, and was novel. That it was not inserted in the original patent for the improvement is unimportant. It is very plainly described in the specifications; and, although an occasional use of it only, was then contemplated, the propriety of inserting it in the reissue cannot now be questioned.

This disposes of the several claims, so far as respects the question of *validity*. The question of *infringement* need not occupy much more time than has already been devoted to it, in contrasting the two presses as complete or entire machines. To the third, fifth, tenth and eleventh claims of 8,130, and the third of 8,316, which

are for combinations into which the plaintiff's bale-chamber enters as an element, the defendant answers that he does not use such a bale-chamber, and consequently does not infringe. What we have already said in comparing the two presses, generally, disposes of this answer, so far as we are concerned. We are unable to discover any material difference in the two bale-chambers; and finding the several combinations and matters involved in these claims, embraced in the defendants' machine, we must, and do, find them to be infringed. This leaves for consideration the seventh and eighth of 8,130, the third and eleventh of 7,983, the sixth of 8,292, and the first of 8,296. As, however, the seventh of 8,130 embraces the entire press, the question of infringement, respecting it, is already disposed of.—The eighth is very clearly infringed. The defendants' traverser is so like the plaintiff's that they can hardly be distinguished; in character and effect, they cannot be. The formal difference resorted to by the defendants is immaterial. The third and eleventh claims of 7,983, the sixth of 8,292, and first of 8,296, are also infringed. The matters claimed distinctly appear in the defendants' press.

This disposes of a case (so far as we are concerned) that has involved an unusual expenditure of time and labor, and in which the interests of both parties have been presented with unusual ability.