## SLATTER vs. HOLTON.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW

ORLEANS.

Positive testimony cannot be destroyed by the negative proof of witnesses who testified that they did not see a certain slave on board the defendant's steamboat.

This is an action to recover the sum of $1600, the value of a slave, which the plaintiff alleges the defendant carried away from the State of Louisiana in the steamer Henry Clay, on or about the 10th January, 1837, whereby he was totally lost. The plaintiff had the steamer Henry Clay sequestered, and claims a privilege thereon for the price and value of his slave.

The defendant pleaded the general issue; and reconvened the plaintiff in damages to the amount of $2000, for the illegal and unjust detention of his steamboat in two instances about this suit; having discontinued the first proceedings instituted by him.

Upon these issues the parties went to trial. Many witnesses were examined on both sides, and the case submitted to the court.

The parish judge was satisfied that the plaintiff fully made out his case, from the evidence and gave judgment for the sum claimed. The defendant appealed.

*Strawbridge*, for the plaintiff.

*Chinn*, contra.

Eastern Dis.
June, 1841.

SLATTER,
vs.
HOLTON.

*Morphy, J.* delivered the opinion of the court.

Plaintiff seeks to recover the value of a slave named Sha-drack who, he alleges, was carried out of the State without his knowledge and consent on board of the steamboat Henry Clay, whereof the defendant was master, on or about the 10th of January, 1837. The answer denies the facts set forth in the petition, and sets up a reconventional demand of $2000 damages for the unlawful and unjust detention of the boat in this suit; and for the expenses and trouble imposed on defendant in causing her to be released from former proceedings instituted by plaintiff against her, but afterwards discontinued. There was a judgment below in favor of plaintiff, from which defendant prosecutes the present appeal.

*Positive testimony, cannot be destroyed by the negative proof of witnesses who testified that they did not see a certain slave on board the defendant's steamboat.*

This case presents no question of law, and the matters of fact which it involves have been determined in favor of plaintiff. An attentive examination of the evidence does not enable us to say that there is error in the judgment complained of. However strong may appear the negative proof resulting from the declarations of several witnesses that they did not see the plaintiff's boy on board the Henry Clay during her voyage from New Orleans to Louisville, it cannot destroy the positive testimony in the record showing that during the trip the boy was acting on board as one of the servants of the boat under the name of Jim Thornton. The testimony shows that the Henry Clay left New Orleans on or about the 10th of January, 1837, for Louisville; that while she was lying below the Cum-berland bar, where she was stopped by the low stage of the waters, a steamboat called the *Wave*, which was passing from the river Cumberland into the Ohio, came alongside the Henry Clay to take off her passengers; that plaintiff's boy was seen waiting at the supper table in the cabin of the latter boat, and aided in carrying the baggage of the passengers from the Hen-ry Clay on board of the Wave; that besides the passengers, the boy Jim Thornton together with three other servants were received on board the Wave at the instance of defendant who

requested the captain of this boat to allow such of these cabin boys as might be wanted to work their passage, adding that the others would pay but expressing a wish that he should be moderate in his charges; that the boy Shadrack or Jim Thornton being remarkably active about the table was permitted to work his passage above Flint Island, when he was discharged and never afterwards heard of; that at some distance further up in the Ohio, the Wave fell in with the steamboat Tuscarora, from which other passengers were taken, and among them a Mr. Peterson, who instantly recognized Jim Thornton as being the boy belonging to the plaintiff, under the name of Shadrack; being perfectly satisfied of the identity of the slave, this witness urged the captain of the Wave to arrest him as a runaway, but the latter declined to do it; saying that the boy had been put on board of his boat by defendant, who would not have done it without authority, and that moreover defendant was responsible for the boy in case he should be a slave; but it is said that there is not a particle of testimony going to show that either Slatter, or Armstrong, his vendee, who brought this suit for his use, ever had any title to this slave, or that the boy Shadrack was ever at any time within the limits of this State. It was admitted on the trial of the cause " *That Slatter had returned to Armstrong the purchase money* ($1600) *of the slave mentioned in the plaintiff's petition.*" With such an admission, the plaintiff's counsel did not perhaps suppose that either the title to, or the possession of the slave would be disputed nor do these points appear to have been made below. Although no evidence was taken or particularly directed to these facts, we find in the record testimony, admitted without objection, which satisfies us of the ownership and possession of plaintiff in Louisiana. Peterson declares that he told the captain of the Wave that the boy passing by the name of Jim Thornton belonged to S. F. Slatter, of New Orleans; that he had been present when H. H. Slatter, the plaintiff's brother bargained for the boy Shadrack with Mr. Tate, in the city of Baltimore; and that he afterwards saw him put on board of a brig at Alexandria,

EASTERN DIS.
June, 1841.

(District of Columbia,) to be sent to the plaintiff at New Orleans. From the circumstance that other boats were lying near the Henry Clay at the mouth of the Cumberland river, it has been contended that plaintiff's boy may have been taken up the river by any one of these boats and that he may have got on board of the Henry Clay at that place, as there was a free intercourse between these boats for several days. This bare possibility cannot avail the defendant; when the proof is abundant that the defendant knew of the boy being on his boat as a servant, and recommended him to the captain of the Wave. The good character and excellent reputation which the testimony establishes for the defendant, and which he no doubt deserves, entirely acquits him of any improper motives; but cannot relieve him from the consequences of his neglect to comply with the formalities required by our laws in relation to persons of color; 1 Bullard & Curry's Digest, 253, sec. 1 and 2; Session acts of 1835, p. 152.

It is therefore ordered that the judgment of the Parish Court be affirmed with costs.