## HORN v. BALTIMORE & O. R. CO.

### (Circuit Court of Appeals, Sixth Circuit.  February 7, 1893.)

1. RAILWAY COMPANIES — ACCIDENTS AT GRADE CROSSINGS — CONTRIBUTORY NEGLIGENCE.

   Rev. St. Ohio, §§ 3336, 3337, as amended May 13, 1886, (83 Ohio Laws, 153,) provide that a locomotive approaching a grade crossing must sound the whistle and ring the bell, and that a failure to do so shall render the company liable to any person injured by such neglect. *Held*, that the statute did not confer a right of action upon the injured person unless the omission of the signals caused the injury, and that such person, if guilty of contributory negligence, could not recover. Pennsylvania Co. v. Rathgeb, 32 Ohio St. 66, followed.

2. SAME.

   A man 71 years of age approached a railroad crossing, riding in a close, covered wagon, so that he was unable to see on either side.  He was familiar with that crossing, and should have known that a train was due about that time, for a freight train was awaiting it on a side track at that point; but he did not stop, or look or listen, before reaching the track, and was struck and killed.  In an action by his administratrix, some of the plaintiff's witnesses testified that the statutory signals were given by the engineer, but others heard no signals. *Held*, that the deceased was guilty of contributory negligence, and plaintiff could not recover.

3. SAME — SIGNALS — CONFLICT OF EVIDENCE.

   The testimony of some credible witnesses that they heard the whistle and bell of the engine is not in conflict with the testimony of others, who heard nothing; for the observation of the fact by some is entirely consistent with the failure of others to observe, or their forgetfulness of its occurrence. Stitt v. Huidekopers, 17 Wall. 393, followed.

4. SAME — BURDEN OF PROOF.

   Although the burden of proving contributory negligence is upon defendant, the defense may be founded upon facts shown by plaintiff's evidence alone.

5. SAME — INSTRUCTIONS — DIRECTION OF VERDICT FOR DEFENDANT.

   In an action for death by wrongful act, where the only legal inference that can be drawn from the evidence is that deceased was guilty of contributory negligence, an instruction to find for defendant is not error. Pleasants v. Fant, 22 Wall. 120, followed.

In Error to the Circuit Court of the United States for the Eastern Division of the Southern District of Ohio.  Affirmed.

S. M. Hunter, for plaintiff in error.

Kibler & Kibler and J. H. Collins, for defendant in error.

Before JACKSON and TAFT, Circuit Judges, and SWAN, District Judge.

SWAN, District Judge.  The plaintiff in error as administratrix of the estate of James S. Horn, deceased, brought this action in the court of common pleas for the county of Licking, in the state of Ohio, to recover damages for the death of her intestate, who was killed at the Maple street crossing in the village of Utica by the cars of the defendant in error, in the evening of September 4, 1890. The case was seasonably removed to the circuit court of the United States for the southern district of Ohio upon the petition of the railroad company, alleging the diverse citizenship of the parties, and it was there tried before Judge Sage and a jury.  At the close

of the plaintiff's evidence the circuit court directed a verdict for the defendant on the ground that the deceased's negligence precluded the plaintiff's recovery.

The time and locality of the accident are not in dispute, nor is there any essential difference in the relations of the circumstances given by the various witnesses. Decedent was 71 years of age, and was engaged in vending washing machines. He had resided in Utica for 4 years, and in its vicinity for 10 or 12 years, and was familiar with the railroad crossings in that village. At the time of his death, he was riding in a close, covered wagon, drawn by a single horse. The cover extended the whole length of the vehicle, and equally shut out his view of objects on either hand, and hid him from the sight of persons on each side. The evidence is conflicting as to the condition of his hearing, but, under the view taken of the case, that fact is immaterial.

The railroad, from its entrance, in the upper limits of the village, runs in a north and south line, parallel with Main street, as far south as North street, which it intersects at a right angle; thence it carries an easy curve through the village to the southeast, intersecting somewhat obliquely, and on the same level, Maple street, 300 feet south of North street. The course of North and Maple streets is east and west. The main track from about North street southward is flanked on each side by side tracks. On the night in question the east side track was occupied by a north-bound freight train, which extended from the switch on North street to a point below Maple street, but had been divided at the latter crossing to permit the passage of vehicles over the tracks. This train was awaiting the passage of the south-bound express train, due at Utica about 8 o'clock P. M., but that night 10 or 15 minutes late. On the south side of Maple street, about 15 feet from the track, stood a grocery, in front of which sat three persons who witnessed the accident. Two of these testified to its circumstances. Their testimony agrees, substantially, that they heard the whistle of the approaching train about the same time that the deceased (whom they did not see, but whom they recognized by his wagon) came from the eastward along Maple street until about opposite the grocery, where the horse seemed to halt momentarily, but was urged on, by the slapping of the reins, towards the crossing. The horse again seemed to halt when he reached the side track, but was apparently urged on as before, when the horse and wagon were almost instantly struck by the train, and Horn was killed. There is no evidence that the bell of the locomotive was rung. Several witnesses testified positively that the whistle was sounded, while there is a negative testimony from others that they did not hear it. The view of the coming train was somewhat obstructed to an observer on Maple street by the position of the freight train, and there is evidence that a lumber yard on the north side of Maple street, and an orchard north of North street, interfered with the sight of the track. There is no evidence, however, that the decedent made any attempt to look or listen for the train, beyond the slackening of the horse's pace in front of the grocery, and as he came upon the side track. There was no stop by the deceased

from the time he was first seen at the grocery until the collision, nor anything to indicate any effort to listen for danger. The train was running at a speed of 45 or 50 miles per hour, and did not regularly stop at Utica.

The charges of negligence upon which this action is based are (1) that "said passenger train was then and there negligently operated up to and over the crossing, by running at an excessively high, careless, negligent, and dangerous rate of speed;" and (2) "negligently and carelessly gave no signal of warning of its approach to said crossing."

But little stress is laid upon the first charge, except as it may be connected with the failure to give the statutory signals when approaching the crossing. It has been held that high speed is not per se evidence of negligence. McKonkey v. Railroad Co., 40 Iowa, 206; Klanowski v. Railroad Co., 64 Mich. 287, 31 N. W. Rep. 275. It is not claimed that the statutes of Ohio limit the rate of speed at which railroad trains shall be run in approaching highway crossings, or that it is restricted by any ordinance of the village of Utica. The examination of this question is, however, unnecessary, as the case does not call for its decision.

2. The ground of recovery most strongly pressed is founded on the alleged breach of the statute of Ohio. By section 3336, Rev. St. Ohio, as amended May 13, 1886, (83 Ohio Laws, 153,) it is provided:

"Every company shall have attached to each locomotive engine passing on its road a bell of the ordinary size in use on such engines, and a steam whistle, and the engineer in charge of an engine in motion, and approaching a turnpike, highway, or town crossing, upon the same level therewith, and in like manner when the road crosses any other traveled place, by bridge or otherwise, shall sound such whistle at a distance of at least eighty, and not further than one hundred, rods from the place of such crossing, and ring such bell continuously until the engine passes such road crossing. * * *"

Section 3337 imposes a penalty upon the "engineer or person in charge of any such engine who fails to comply with the provisions of the preceding section," and further provides that "the company in whose employ such engineer or person in charge of an engine is, as well as the person himself, shall be liable in damages to any person or company injured in person or property by such neglect or act of such engineer or person." While this statute subjects railroad companies to liability for the damages occasioned by its violation, it does not confer a right of action upon the person injured, unless the omission of the signals caused the disaster. It does not absolve a plaintiff from the consequences of his own negligence. This statute, or its equivalent, has been construed by the supreme court of Ohio in Pennsylvania Co. v. Rathgeb, 32 Ohio St. 66. It is there said:

"It is evident from this language [of the statute] that the failure to give signals must have occasioned the accident,—that is, must have been the proximate cause of it,—before a recovery can be had. The injury must happen by 'negligence of the engineer.' If it occurred from some other cause, liability cannot arise therefor, under that statute. Indeed, this statutory duty is not different, in the responsibility it imposes upon a railroad company, from that

arising under the common law. * * * Before, therefore, the plaintiff can recover because the signals were not given, he must cause it to appear that this failure of duty brought about the disaster; for, if his own imprudence was the moving cause, he cannot maintain his action, although the company may not have observed the provisions of the statute."

To the same effect are the cases of Railroad Co. v. Elliott, 28 Ohio St. 346; Railroad Co. v. Whitacre, 35 Ohio St. 627, 630.

This ruling in no degree conflicts with the rule of the federal courts that the onus of showing contributory negligence is upon the defendant. That defense may be, and often is, founded upon the facts shown by the plaintiff's evidence alone. While there was clearly an infraction of the statute, which is evidence of negligence on the part of the train hands, in the failure to ring the bell, because the statute requires both ringing of the bell and the sounding of the whistle within the prescribed limits, the action must fail if it appears that the decedent contributed to his own death by his negligence. If but one inference can be legally drawn from the facts, and it would have become the duty of the court to set aside a verdict for the plaintiff, had the issue been submitted to them, then the instruction was clearly correct. Improvement Co. v. Munson, 14 Wall. 448; Pleasants v. Fant, 22 Wall. 120; Schofield v. Railway Co., 114 U. S. 615, 5 Sup. Ct. Rep. 1125.

That it is the duty of a traveler upon a highway, when approaching a railroad crossing, to make vigilant use of his eyes and ears, is a proposition upon which the federal and state courts are in entire harmony. The traveler must look and listen before venturing to cross the track at any time. It has been well said that a railroad track is itself notice of danger. The necessity of this vigilance, which is the dictate of common prudence, is the more imperative when the traveler is familiar with the crossing, when its dangers are apparent from its surroundings, and when, from long residence in its vicinity, he may fairly be presumed to know, approximately at least, when a train may be expected. Under such circumstances, any relaxation from that degree of care which such knowledge requires is the omission of a duty which bars recovery. The object of the statute in enjoining the use of the bell and the whistle is not only the protection of the traveler, but also the safety of the train and its passengers, who are often endangered by such collisions. The act does not make the railroad company a guarantor of the effectiveness of these warnings to the end for which they were designed. If properly given, though unheeded by the traveler, because of his defective hearing, inattention, or any other cause not referable to any default of the railroad company, and a collision ensues, the statutory liability for the resultant injuries is not incurred. There is no evidence that the failure to ring the bell in any way contributed to this unfortunate accident, or that it might have been heard more distinctly, or further, than the whistle. On the contrary, the latter, as everybody knows, is audible at a far greater distance, and the evidence is that the whistle of this train was coarse and heavy, and seasonably sounded. While some witnesses testify they did not hear it, none denied that it was blown.

The witnesses Scott and Dennison, the only spectators of the col-

lision who testified, sat in front of the grocery, less than 50 feet from the track, and concur that the whistle was sounded at the water tank, which is 1,500 feet north of the Maple street crossing, and within the statutory limits for the signal, and that at that time the deceased was in front of the grocery, and about 50 feet from the track. Shaw, who drove across the Maple street crossing eastward, just escaping the train, heard the whistle, and located it near the water tank. Lampson, who was on the west side of Maple street, 250 feet from the track, heard it sounded when the train was, as he thought, 400 feet south of the water tank, and also at the Black Jack crossing, one quarter of a mile further north. Baughman, who was on Main street, testifies positively that it was sounded. Clark, who was at the depot, 75 feet south of Maple street, heard the rumble of the approaching train. These are the plaintiff's witnesses, and there is nothing in the record to discredit them. In the very nature of things, their affirmative testimony that the warning was given must be accepted as proof of that fact, notwithstanding an equal or greater number of witnesses failed to notice it, from whatever cause. There is in such cases no conflict of evidence as to the matter in question. The observation of the fact by some is entirely consistent with the failure of others to observe it, or their forgetfulness of its occurrence. Stitt v. Huidekopers, 17 Wall. 393; Railroad Co. v. Elliott, supra. Accepting therefore, as an established fact, that the whistle was sounded, and was heard by the deceased, and yet he persisted in attempting to cross the track ahead of the train, there can be no doubt that he should be held to be the author of his own misfortune. The same result must follow if he neglected the means of knowledge which would have informed him of his danger, and failed to use his faculties, through inattention or otherwise. Dennison, one of the only two witnesses who testified to the circumstances of the accident says that "Horn went across like any man that was driving across, supposing the track was all clear;" that his horse was walking when he passed the grocery, and when he went on the crossing. The latter fact is confirmed by Scott, the other spectator who was with Dennison. No one saw Horn look or listen. There was nothing in his conduct to indicate that he had any apprehension of the proximity of the train. It is true that his horse showed an inclination to halt in front of the grocery, 50 feet from the track, and again while on the side track, within five or six feet of the main line. These attempts, however, were manifestly not prompted by the caution of the driver, but by the instinct of the animal; for on each occasion the deceased urged him on. The only inference that can be drawn from these facts is that the deceased neither heard nor saw the coming train, nor did he make any attempt to do so. While it is true that his view of it was to some extent obstructed by the presence of the freight train on the east side track, and by other objects in the vicinity, the decedent carried with him, in the cover of his vehicle, and the position of his seat, the greatest obstruction to a view of the train. These conditions increased the dangers of the crossing, and should have stimulated his vigilance in approaching it, familiar as he was with the locality,

and knowing, as he presumably did, that the train would not stop at Utica, and that it was momentarily expected, as the position of the freight train, awaiting its passage, unmistakably denoted. It is undisputed that he could not see the train from his seat in the wagon, and equally certain that he made no effort to see it, or listen for its approach. From the time he reached the grocery until the collision, he was not seen to move from his seat, or change his position. While his conduct is persuasive that he did not hear the whistle, or the coming of the train, it is clear that, had he stopped and listened, he would have heard, at least, as others did, the warning of the whistle, if not the noise of the train. Assuming the correctness of the estimated speed at 50 miles per hour, it was evidently but 75 feet from the crossing when Horn's horse halted in his walk on the side track, not eight feet from the main track. It is incredible that the decedent, if his sense of hearing was not blunted, could have failed to notice the approach of the train; and it is obvious that, if he did hear it, he must have made a fatal miscalculation as to its proximity when he urged the horse over the crossing. There is no evidence that there was anything calculated to divert his attention, prevent his hearing, or lull him into security. In short, there is nothing to extenuate the recklessness of his approach to the crossing. Railroad Co. v. Houston, 95 U. S. 697; Schofield v. Railroad Co., 114 U. S. 615, 5 Sup. Ct. Rep. 1125; Haas v. Railroad Co., 47 Mich. 402, 11 N. W. Rep. 216. It is unnecessary to pass upon the omission of the plaintiff in the court below to give evidence of special damages.

The judgment of the circuit court must be affirmed, with costs.