## DIDIER *v*. WEBSTER MINES CORPORATION
### No. 2670
April 3, 1925.                                  234 P. 520.

1. MINES AND MINERALS—MINER EMPLOYED IN IMPROVING MINE BY LESSEE HELD NOT UNDER PARTICULAR SECTION ENTITLED TO LIEN.

   Provisions of Rev. Laws, sec. 2213, giving miners liens for work in improving mine whether at instance of owner or agent, and that contractor, subcontractor, or other having control of claim or part thereof shall be held agent, does not apply to persons employed by lessee of mine.

2. MINES AND MINERALS—LESSEE'S EMPLOYEES HELD ENTITLED TO LIEN, WHERE OWNER'S NOTICE OF NONLIABILITY WAS NOT POSTED ON "CONSPICUOUS PLACE."

   Miners employed by lessee of mine, which employment was known to owner, *held* entitled to liens under Rev. Laws, sec. 2221, though notice of nonliability was posted, where posting was on building used by lessee as home and office, which was not reasonably calculated to impart information, and was therefore not "conspicuous place" within statute.

3. MINES AND MINERALS—LESSEE OF MINE HELD NOT NECESSARY PARTY TO SUIT BY HIS EMPLOYEES TO ENFORCE LIEN.

   In suit by miners, employed by lessee of mine, to foreclose lien under Rev. Laws, sec. 2221, because of owner's failure to post nonliability notice in conspicuous place, though it knew work was being done, lessee *held* under facts of case not necessary party defendant; complete remedy being against property.

4. MINES AND MINERALS—WAGES OF COOK AND HELPER HELD NOT LIENABLE.

   In suit to enforce lien against mine owner, claims for wages of cook and his helper *held* not lienable, in view of theory expressed in Rev. Laws, sec. 2213, that liens are given for enhancement of value of property.

5. Mines and Minerals—Personal Judgment Against Owner for Nonlienable Claims Against Lessee Held Erroneous.

In suit to foreclose lien for labor performed in mine by employees of B., where property was chargeable for owner's failure to post nonliability notice as required by Rev. Laws, sec. 2221, *held* erroneous to render personal judgment against owner for nonlienable claims, where there was no evidence that B. was agent in fact of owner.

See 19 C. J. p. 1255, n. 16; 27 Cyc. p. 17, n. 6; p. 56, n. 30; p. 770, n. 27; p. 774, n. 43 (new), 44; p. 779, n. 86 (new) ; p. 781, n. 4; p. 783, n. 16; 36 Cyc. p. 1119, n. 36.

Appeal from Fifth Judicial District Court, Nye County; *Frank T. Dunn,* Judge.

Suit by Matt Didier against the Webster Mines Corporation. From a judgment and decree for plaintiff, defendant appeals. **Affirmed in part, and reversed in part. Rehearing denied.**

*Hoyt, Norcross, Thatcher & Woodburn,* and *Wm. Forman,* for Appellant:

Lessees were indispensable parties without whom no judgment could be entered determining issues. The debt is principal thing and must be established; the foreclosure of lien is but collateral. Rosina v. Trowbridge, 20 Nev. 112; Orr v. Ulyatt, 23 Nev. 134; Missoula Mer. Co. v. O'Donnell, 60 Pac. 597.

Notice of nonliability having been posted in conspicuous place, filed and recorded, there can be no claim of lien against defendant. Stats. 1917, 435. "Conspicuous" means easily discernible. Williams v. C. R. Co., 88 N. Y. Sup. 434; Ogglesby Co. v. Lindsay, 72 S. E. 672.

This case is distinguished from Verdi Co. v. Bartlett, 40 Nev. 317, since in that case material was furnished to contractor and used on premises. Bray does not come within class of "other persons having charge or control" in lien law. Ejusdem generis, 19 Cyc. 1255. Corresponding statute of California makes lessee agent. Kerr, C. C. P. sec. 1183. Posting notice will relieve against claim or lien for improvement made by one not acting in capacity of agent. Belnap v. Condon, 23 L. R. A. (N. S.) 601; Rosina v. Trowbridge, supra.

What is purpose° of section 9 if owner cannot be relieved? If lessee is agent of owner, why did not legislature say so?

Claims of cook and cook's helper are not lienable. Their employment by lessees is not shown to have been authorized by defendant.

*Jos. D. Murphy* and *Ryland G. Taylor,* for Respondent:

Defense that property was leased to lessees is without merit, since defendant had knowledge that work was performed and improvements made. Rev. Laws, 2213; Gould v. Wise, 18 Nev. 256; Phillips v. Snowden, 40 Nev. 66.

Lease gave lessors supervision and control of workings and right to direct expenditures of money. Under such conditions lessees were agents. Rev. Laws, 2213.

Defendant knowingly received benefits of work and improvements. It is unjust to say that if service could not be had on agent owner could escape payment for benefits because it could not be sued except jointly with agent. Lamb v. Lucky Boy Mng. Co., 37 Nev. 9.

Foreclosure of lien is action in rem. Statute does not require joinder of parties. Party legally liable must pay if summoned. Rev. Laws, 2227, 5243, 5031.

Even in California practice of joining contractor is only commended, not held mandatory. Giant Powder Co. v. Flume Co., 78 Cal. 193, cited in Kerr, C. C. P. sec. 1183, n. 89. In this case, Bray was duly authorized agent, not contractor. We do not claim he is personally liable, as contractor or otherwise. However, while contractor is proper, he is not necessary party. Defendant should have moved for joinder, if he so desired. Fresno etc. Co. v. Manning, 130 P. 196; Yancy v. Morton, 29 P. 1111. It is not necessary that personal judgment be had against contractor. Russ Co. v. Garrettson, 25 P. 747. Materialman is not required to sue contractor jointly with owner. Wilder's Sons v. Walker, 25 S. E. 571.

Where no judgment is demanded against principal contractor in such proceeding he is not necessary party.

Hubbard v. Moore, 31 N. E. 534; McDonald v. Backus, 45 Cal. 262.

Owner's property is liable for materials furnished for erection of house at instance of his statutory agent. Verdi Lumber Co. v. Bartlett, 40 Nev. 317.

Objection to nonjoinder should have been raised by demurrer. By going to trial and concluding case without such objection by demurrer, defendant is now estopped. Rev. Laws, 5040; Yancy v. Morton, supra.

Notice of nonliability must be posted within three days after owner has notice of commencement of work, and in conspicuous place, which was not done in this case. Owner must bring himself squarely within provisions of statute. Rosina v. Trowbridge, 20 Nev. 106; Evans v. Judson, 52 P. 585. Blam Mechanics' Liens, 445; Phillips v. Snowden, 40 Nev. 66.

## OPINION

By the Court, DUCKER, J.:

Respondent instituted this action in his own behalf and as assignee of several others to foreclose liens for labor performed by them upon the mining property of appellant, situated in Nye County, while the said property was under the charge of one Elmer M. Bray. The mining property belonging to respondent, together with the mill and equipment contained therein, situated on said property, all of which is sought to be charged with the several liens, the operation of the same by said Bray for and on behalf of the appellant as its agent, the work done upon the property by the several lien claimants by agreement with Bray and the value thereof, the filing and recording of their liens as required by law, the expense incident to making, verifying, filing, and recording the liens, and the assignment of the liens of the other lien claimants to respondent prior to the commencement of the suit, are all formally alleged in the amended complaint. It is also alleged that the appellant did not post notices that it would not be responsible for said labor at some conspicuous place on the property, as

required by law.    The sum of $1,500 is claimed as a reasonable attorney fee in the prosecution of the suit.

All of the material allegations of the amended complaint are denied in the answer, except the ownership of the property sought to be charged with the liens, and the filing and recording of the liens.

For a first and separate defense it is alleged that appellant, on the 5th day of April, 1921, leased the property to said Elmer M. Bray and one Jay A. Carpenter; that thereafter, on or about the 23d day of November, 1921, a supplemental lease was entered into by appellant, Bray, and one B. F. Miller, Jr., by the terms of which Miller succeeded to the interest of Carpenter in the original lease; that at all times subsequent thereto said Bray and Miller were in the possession of the property and operating the same under and by virtue of said lease and agreement.    A copy of both agreements are attached to and made a part of this defense.    It is further alleged in this defense that, if any labor was performed on the property by the several lien claimants, it was under contract with and at the instance and request of Bray and Miller as lessees of the premises, and not for or on behalf of appellant, or its agents; that neither said Bray nor Miller were at any time the agent or agents of the appellant, or authorized to contract for any of the alleged labor on its behalf.

It is also alleged that, on the 14th day of September, 1922, appellant posted a nonliability notice in a conspicuous place upon the property, and within five days thereafter filed a duplicate original of the same with the county recorder, together with the affidavit attached showing such posting.

As a further, second, and separate defense it is alleged that said Bray and Miller are and each of them is the party primarily responsible for the contract of employment and the performance of labor alleged, and should have been made parties to the action; that under and by virtue of the laws of the State of Nevada actions for the foreclosure of liens by mechanics and others must be commenced within six months after the filing of the

claims of lien; that more than six months have expired since the filing of the claims in the action, and that no action can now be maintained for the foreclosure of the liens against Bray and Miller; and that by reason of the failure to join said Bray and Miller as parties defendants this action cannot be maintained.

On the trial of the case, as substantially stated by the district judge in his written decision, evidence was offered in support of all the lien claims, showing the time the work was performed, where it was performed, the amounts due on each claim; that all of the lien claimants were employed by Bray; that Miller was not known to any of them, and that, so far as they knew, he had nothing to do with the property; that no notice of nonliability was posted as required by law. The defendant offered no evidence to disprove any of these facts, except that Bray and Miller were lessees, and offered the lease in evidence to support this contention; also that a nonliability notice was posted in one place upon the property, to wit, the office or residence building occupied by Bray and his family.

Judgment was entered in favor of respondent for the amount of eight of the claims, together with cost of preparing, filing, and recording the liens therefor, and for attorney's fee and foreclosure decreed against the property. Personal judgment was rendered for two of the claims held not lienable. This appeal is taken from the judgment and decree, and from the order denying a motion for a new trial.

Many errors are assigned, but in their brief and argument counsel for appellant have confined their discussion of errors to four contentions. It is contended: (1) That Bray and Miller were necessary and indispensable parties, without whom no judgment or decree could be entered determining the issues of the cause; (2) that, notice of nonliability having been posted in a conspicuous place and property filed and recorded, there can be no claim of lien against the defendant; (3) that there is no evidence that Bray was an agent of the defendant corporation; and (4) that the court erred in

entering personal judgment against the defendant on the sixth and eighth causes of action.

A section of the lien laws involved reads:

"  *    *    *   And all miners, laborers and others who work or labor to the amount of five (5) dollars or more in or upon any mine, or upon any shaft, tunnel, adit, or other excavation, designed or used for the purpose of prospecting, draining or working any such mine; and all persons who shall furnish any timber or other material, of the value of five (5) dollars or more, to be used in or about any such mine, whether done or furnished at the instance of the owner of such mine or his agent, shall have, and may each respectively claim and hold, a lien upon such mine for the amount and value of the work or labor so performed, or material furnished; and every contractor, subcontractor, architect, builder, or other persons, having charge or control of any mining claim, or any part thereof, or of the construction, alteration or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner, for the purposes of this chapter." Section 2213, Rev. Laws, 1912.

1. It may be stated as a general rule that a lessee contracting for the improvements upon demised premises does not merely, by virtue of his relation as lessee, contract as the agent of the lessor so as to subject the property to mechanics' liens therefor. 20 Am. & Eng. Ency. of Law, p. 319, and cases cited in note 1, p. 318. The statute quoted above does not make any innovation in this rule by either expressly or indirectly making a lessee the agent of the owner. The words "other persons" employed in the statute following the specific naming of classes of persons who are to be deemed agents of the owner for the purposes of the lien chapter must, under the well-known rule of "ejusdem generis," be held to refer to persons of a class analogous to those specified, and, so construed, cannot be held to include lessees. In fact, the clause of the statute specifying the persons who are to be held the agents of the owner has been construed by this court as not including a lessee.

Gould v. Wise, 18 Nev. 253, 3 P. 30. In that case one Torrey, who was in the possession of a written lease of reduction works and the land upon which they were situated, belonging to a corporation, was. furnished materials and labor which were used in repairing and carrying on the mill. The question was whether Torrey, the lessee, could create a lien upon the premises that would affect the estate of the lessor. In deciding this question the court, after quoting portions of section 1 of the lien laws, including the clause under consideration, said:

"It may be conceded for the purposes of this case, that to authorize a lien there must be an employment by the owner of the building, or his authorized agent, and that an employment by a lessee does not constitute the employment contemplated by the statute; and, further, that to constitute the contractor, subcontractor, architect, builder, or other person the statutory agent of the owner, such person must have been employed, directly or indirectly, at the instance of the owner, or his conventional agent."

So far as the opinion in the foregoing case discloses, Torrey was a mere lessee without any other contractual relations with the owner of the reduction works. And it is to be observed that the court, in holding that an employment by the lessee does not constitute the employment contemplated by the statute, confined its statement of the law strictly to the facts of the case.

2. In the instant case the evidence discloses that Bray's relations to the appellant bore other characteristics than those of a mere lessee. The evidence in this regard consists mainly of the instrument denominated a lease and agreement, referred to and made a part of appellant's answer and introduced in evidence in its defense. But we do not deem it necessary to determine. whether this instrument, in addition to being a lease of the property, was also, in effect, such a contract concerning it as to make Bray the statutory agent of the appellant within the contemplation of section 2213, for the reason that we have reached the conclusion that

there was no nonliability notice posted upon the property as required by law. Such being the case, the property became subject to the liens for work done upon it contracted for by Bray by virtue of section 9 of the lien laws, as amended Stats. 1917, c. 232, sec. 1, even if in contracting for such work he was not appellant's agent in fact or its statutory agent. Gould v. Wise, supra; Rosina v. Trowbridge, 20 Nev. 105, 17 P. 751; Lamb v. Lucky Boy M. Co., 37 Nev. 9, 138 P. 902. This section reads:

"Every building or other improvement mentioned in section 1 of this act, constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this chapter, unless such owner or person having or claiming an interest therein shall, within three days after he shall have obtained knowledge of the construction, alteration or repair, * * * give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place upon said land, or upon the building or other improvement situate thereon, and also shall, within five days after such posting, file a duplicate original of such posted notice with the recorder of the county where said land or building is situated, together with an affidavit attached thereto showing such posting of the original notice. Such filing shall be prima facie evidence of said posting."

In the cases cited no notice was posted. In the instant case a nonliability notice was posted by the appellant upon its property where the mining operations were carried on by Bray, but not in the place contemplated by the statute. The obvious purpose of the requirement is to give actual notice to workmen or materialmen that the owner of the property disclaims responsibility for liens upon it for their services or supplies (Phillips v. Snowden Placer Co., 40 Nev. 66–85, 160 P. 786), and,

unless the place where such notice is posted is one reasonably calculated to impart such information to them, it cannot be said to be conspicuous within the meaning and purpose of the statute.

Mr. Wicks, an agent of the appellant, testified that he posted a nonliability notice on its property on September 14, 1922; that the notice was posted on the building used by Bray as a home and office, and at the side of the main entrance; that he left the property on the following day, and did not visit it again until January 28, 1923, when he went to the office and found that the notice he had posted in September still remained posted. It was also proved by Mr. Wicks that he filed a copy of the notice with the county recorder. The evidence shows that this notice did not come to the attention of any of the lien claimants. This, however, was not essential, providing the place of posting was reasonably adapted to accomplish that effect.

The evidence shows that the building on which the notice was posted was used by Bray as an office and was also his home. He resided there with his wife and children. It was situated about 40 feet from the nearest trail traveled by the workmen in going from the bunkhouses to their places of work, and to the boarding house, and in returning. The nearest bunkhouse was about 100 yards from the office, and the nearest places of work—the main tunnel and the blacksmith shop—were several hundred yards from the office. The mill was twice that distance, and the boarding house still further away. It is conceded that no notice of nonliability was posted at the bunkhouses, boarding house, mill, tunnel, blacksmith shop, or other place where men worked; appellant relying upon the notice posted at the office as a sufficient compliance with the statute.

Several of the lien claimants saw a semimonthly pay day notice at the mouth of the tunnel, but none of them saw a nonliability notice at any place. It appears that the employees had no occasion to go to the office to get their pay; that Bray gave them their checks either at the bunkhouse or where they were working.

It appears from the testimony of respondent's witnesses that one of them went to the office building three times; twice after dark, when he and his wife were invited to spend the evening, and once in the daytime, when Bray called him to talk over some business; that one of the witnesses and his wife visited there on several evenings; and that another of the witnesses was there three times, once in the night and twice in the daytime. Other than in these instances, so far as the record discloses, none of the lien claimants were at the house or any nearer than the trail leading by it. That the notice could not be readily seen from the trail leading by the house by one who did not know it was there is fairly deducible from the evidence. That it could not be read by one standing in the trail was established by the evidence.

The court found that the notice was not posted in a conspicuous place, and we are of the opinion that the evidence would admit of no other finding. A place where workmen had no business to go, and where otherwise they would be unlikely to go on account of the place being the home of a family, cannot, in the absence of evidence showing that they did nevertheless frequent the place, be held to be a conspicuous spot for giving notice to them. The location was ideal for giving notice to Bray, but was unlikely to impart notice to his employees.

As the nonliability notice was not posted in a conspicuous place on the mining property, within the meaning of the law, it follows that, under the provisions of section 2221, if the appellant had knowledge that the work was being done, it must be held to have been performed at the instance of the owner of the property. Gould v. Wise, supra. See, also, Rosina v. Trowbridge, 20 Nev. 105, 17 P. 751.

The evidence discloses that appellant had such knowledge, and appellant makes no contention to the contrary.

3. Appellant complains that Bray, who contracted for the employment of the lien claimants, was not made a party defendant to the action, and asserts that he was

a proper, necessary, and indispensable party. We see no real ground for this contention. The lien laws of this state do not, as in some states, either expressly or by necessary implication, require the contractor to be made a party defendant. The laborer or materialman is given the right to sue the owner of the property directly to enforce his lien if the contractor or other person named is the statutory agent of the owner, or, not being the the agent of the owner, the work was done or material furnished with his knowledge, and no nonliability notice was published as required by law. The action was brought against appellant under the provisions of the statute to enforce the liens against its property, and no personal judgment is sought against Bray. The law applicable to the facts of this case regards the services of the lien claimants as having been furnished at the instance of the owner. How, then, can appellant's right be said to be affected by the nonjoinder of Bray, or even that he is a necessary party to a complete determination of the action?

It is urged that Bray contracted for the work and is the debtor, and that the existence of the debt is the principal issue, and cannot be determined without the presence of the debtor as a party defendant. Authority is cited to this rule, but we do not see the logic of it when a complete remedy is given to the lien claimants against the property of the owner, and when, as in this case, such remedy has been exclusively sought, and the evidence establishes without conflict the amount and value of the services of the various lien claimants. True, the debt must be established, else the lien claimant would fail to establish his right to have his lien enforced, but why the contractor must be made a party to ascertain it in all cases is not discernible. If there is any reason existing why, in any case, a contractor should be made a party, he may be made a party under the general rules of practice. Hubbard v. Moore, 132 Ind. 178, 31 N. E. 534.

We hold that, under the facts of this case, Bray was not a necessary party defendant. On the question of

whether, in an action to enforce a mechanic's lien, the contractor is a necessary party the authorities are not harmonious, which is due in a large measure to the variant statutes on the subject. Among the cases holding that the contractor is not a necessary party are Green v. Clifford, 94 Cal. 49, 29 P. 331; Yancy v. Morton, 94 Cal. 558, 29 P. 1111; Wood v. Oakland, etc., Transit Co., 107 Cal. 500, 40 P. 806; Hubbard v. Moore, supra; Burgi v. Rudgers, 20 S. D. 646, 108 N. W. 253; Wilder's Sons Co. v. Walker, 98 Ga. 508, 25 S. E. 571.

4. Among the causes of action set out in the amended complaint are one for services as a cook, and one for services for a cook's helper. The trial court held that these claims were not lienable, but gave a personal judgment for them against the appellant. The claims are not such as to entitle the claimants to a lien against the appellant's property. Holtzman v. Bennett (Nev.) 229 P. 1095. The general theory upon which liens to laborers, mechanics, and materialmen are given is that by the labor, or use of the material, the property has been enhanced in value. This theory finds expression in section 2213, supra. The services performed by the cook and the cook's helper are not of the nature of those embraced in the statute.

5. It was error, however, for the court to render a personal judgment against the appellant for these services. There is no evidence to show that in contracting for their services Bray was acting as the agent in fact for the appellant, thus rendering it personally liable upon general principles of law. If he was the statutory agent, the effect of his acts in employing labor could only operate to charge appellant's property with a lien for such services as were of a lienable character, and could not charge appellant with any personal liability.

As to these two last-mentioned causes of action the judgment is reversed, and it is affirmed in all other respects.

### ON PETITION FOR REHEARING

September 12, 1925.

*Per Curiam:*

Rehearing denied.

————

# CONFER v. DISTRICT COURT
## No. 2688
April 6, 1925.                                234 P. 688.

1. PROCESS—TO OBTAIN LEGAL SERVICE BY PUBLICATION, COMPLAINT MUST STATE GOOD CAUSE OF ACTION.
    Under Civil Practice Act, sec. 84, as amended by Stats. 1923, c. 158, to obtain legal service by publication against nonresident, complaint must state good cause of action to satisfaction of court.

2. DIVORCE—ATTACK ON DECREE FOR WANT OF JURISDICTION TOO LATE, WHERE PETITIONER KNEW ALL THE FACTS BEFORE DECREE.
    Where defendant in divorce action denied jurisdiction only on information and belief that necessary residence of plaintiff had not been established, attack on decree on those grounds *held* too late, where all facts were known before decree.

3. DIVORCE—DECREE MAY BE ANNULLED ONLY FOR FRAUD WHICH IS EXTRINSIC OR COLLATERAL.
    Decree of divorce may be annulled only for fraud which is extrinsic or collateral to matter tried by court, and not fraud in matter on which judgment was rendered.

4. DIVORCE—FRAUD AS TO RESIDENCE, BEING JURISDICTIONAL FACT, NOT AVAILABLE TO ANNUL DECREE.
    Fraud in alleging or establishing required residence in divorce action, being a jurisdictional fact, *held* not available to annul decree.

See (1) 32 Cyc. p. 475, n. 3, p. 477, n. 13; (2, 3, 4) 19 C. J. sec. 415, p. 166, n. 28; sec. 438, p. 176, n. 75; 34 C. J. sec. 496, p. 280, n. 96.

ORIGINAL PROCEEDING in mandamus by Emma E. Confer against the Second Judicial District Court of the State of Nevada, in and for county of Washoe, and George A. Bartlett, Judge of said court, to show cause why he should not be compelled to grant order directing service of summons on verified complaint. **Proceeding dismissed. Rehearing denied.**

*Frame & Raffetto,* for Relator:

In action for divorce, being proceeding in rem, and res of action being status of parties, in order to transfer res to jurisdiction other than matrimonial domicile it is necessary that there be abandonment of that domicile with concurrence of act and intention in establishment of actual, bona fide, and permanent domicile in foreign

jurisdiction. Presson v. Presson, 38 Nev. 203; Aspinwall v. Aspinwall, 40 Nev. 55.

Where jurisdiction is lacking by reason of want of domicile of at least one of parties in foreign jurisdiction decree is nullity, and jurisdiction will always be inquired into, even in collateral proceedings, as such decree is void ab initio. Andrews v. Andrews, 188 U. S. 187; Haddock v. Haddock, 201 U. S. 562; Atherton v. Atherton, 181 U. S. 155; Sneed v. Sneed, 123 Pac. 212.

Jurisdiction can never be conferred by consent, waiver, estoppel, or laches. Ex Parte Gardner, 22 Nev. 281; Andrews v. Andrews, supra.

Appearance of party in foreign jurisdiction does not operate to confer jurisdiction over subject matter. Cases cited supra.

Judgment may in proper cases be set aside for fraud, inadvertence, where judgment was improvidently rendered, by court of its own motion, by proper motion, and by independent action. People ex rel. Swartz v. Temple, 37 P. 415; Stimson v. District Court, 47 Nev. 156.

It is duty of court, on suggestion of fraud, to investigate and purge record of judgment, if fraudulent. Pringle v. Pringle, 104 P. 135; Cottrell v. Cottrell, 23 P. 531.

It must be borne in mind that there is a distinction between judgments which are void because of lack of jurisdiction of subject matter, and those in which court does not possess jurisdiction over the subject matter or parties and which may be set aside on ground of extrinsic or collateral fraud. In latter class, want of jurisdiction over subject matter invalidates judgment.

*S. W. Belford, Samuel Platt,* and *E. F. Lunsford,* for Respondents:

Whole case may be reduced to one question, may decree be impeached for fraud appearing de hors the record by showing prevailing party testified falsely to material facts establishing residence?

This court has repeatedly held that the question of

residence of plaintiff in divorce action is one of fact to be determined by trial court. Fleming v. Fleming, 36 Nev. 135; Presson v. Presson, 38 Nev. 203; Blakeslee v. Blakeslee, 41 Nev. 235. It follows that before court could have entered decree in favor of plaintiff it must have found as fact contrary to allegation of complaint in instant proceeding. Court having so found, question then arises whether or not same matter may be again investigated. Complaint nowhere alleges that any facts were concealed by plaintiff in divorce action, but it is simply alleged generally that his divorce complaint contained false allegations as to residence and that he gave false testimony thereof. Neither is it anywhere alleged that defendant in divorce action was imposed upon or prevented from showing facts now alleged, with but one exception, that plaintiff left jurisdiction immediately after decree was entered and never returned. This is not newly discovered evidence which would affect material issues of case but could be considered only as impeachment by inference. Whise v. Whise, 36 Nev. 16. Allegation of departure after decree is not sufficient to vitiate decree, but argues only falsity of residence.

Motion to set aside divorce based on finding of residence supported by evidence cannot prevail on ground that plaintiff departed immediately after decree was rendered, thereby indicating testimony as to residence was false. Reeves v. Reeves, 123 N. W. 869.

It follows that matters now set up are not extrinsic or collateral to matters determined by trial court, and such matters are now res adjudicata as to parties. 19 C. J. 167.

To vitiate decree, fraud must be actual, and extrinsic or collateral as distinguished from judgment obtained on false evidence. Reeves v. Reeves, supra; Lieber v. Lieber, 143 S. W. 458; Orr v. Orr, 146 Pac. 964; U. S. v. Throckmorton, 98 U. S. 61; Friese v. Hemmel, 37 Pac. 458; Greene v. Greene, 2 Gray, 361; Graves v. Graves, 10 L. R. A. (N. S.) 216.

To entitle party to relief in equity perjury or fraud

must consist of extrinsic facts not examined in former action. Moor v. Moor, 63 S. W. 347.

To contention that there was entire absence of animus manendi on part of plaintiff and for that reason court was without jurisdiction, it is sufficient answer that question of domicile was before court for determination as question of fact and involved consideration of animus manendi as element of domicile. Reeves v. Reeves, supra; Bishop on Divorce, sec. 1577.

## OPINION

By the Court, SANDERS, J.:

An alternative writ of mandamus was issued out of this court at the instance of Emma E. Confer, directed to the respondent court and to Hon. George A. Bartlett, as judge thereof, commanding him to show cause before this court at the time specified in the writ why he should not be compelled to grant an order directing that service of a summons issued upon a verified complaint on file in said respondent court be made by the publication thereof.

1. To obtain legal service by publication of a summons against a nonresident, it must appear by affidavit to the satisfaction of the court or judge, not only that the defendant is a nonresident, but also, either by affidavit or by a verified complaint on file, that a cause of action exists against the defendant in respect to whom the service is to be made. Section 84, civil practice act (section 5026, Revised Laws), as amended by Statutes 1923, p. 275. This provision has been interpreted to mean that the probative facts set out in the affidavit or complaint must be sufficient to justify the court in being satisfied that the ultimate facts required by the statute exist. Victor M. & M. Co. v. Justice Court, 18 Nev. 21, 1 P. 831. That is to say, in this instance, the complaint on file must state a valid cause of action in equity to entitle the plaintiff (petitioner herein) to have summons issued and served by publication. The undisputed facts, in brief, are as follows:

In October, 1922, Nathan A. Confer commenced an action in the district court for Washoe County against Emma E. Confer for a divorce on the ground of cruelty, alleging residence in Washoe County for six months before the filing of the complaint. Process and a copy of the complaint were served personally on the defendant at her place of residence in the State of Pennsylvania. She came to Nevada, appeared, and put in an answer, in which she denied, upon her information and belief, the allegation respecting plaintiff's residence, and denied all charges against her, and in her answer, by way of cross-complaint, set up the desertion of her by the plaintiff, and demanded judgment for divorce against him upon the ground of desertion, and asked for suit money and attorney's fees. The plaintiff filed an answer to the cross-allegation, and, after a full hearing upon the pleadings and evidence, the court, George A. Bartlett, judge presiding, found all the allegations of the complaint, including that of residence, to be true, and on the 18th day of July, 1923, rendered a decree of divorce in favor of the plaintiff and against the defendant. The divorce proceedings are perfectly regular and valid upon their face.

On the 30th day of October, 1924, Emma E. Confer filed a complaint in the same court against Nathan A. Confer, claiming that the court was without jurisdiction, for want of residence on the part of Nathan A. Confer, to render the decree of divorce, in this: That Nathan A. Confer left the marital domicile of the parties in the State of Pennsylvania and came to the city of Reno, Washoe County, Nevada, for the sole purpose of obtaining a divorce, and without any intention of making that place his bona fide home and domicile, and for the purpose of inducing said district court to assume jurisdiction of his action for a divorce he falsely represented in his verified complaint that he was a bona fide resident of Washoe County, and had been for six months prior to the filing of his complaint, and to obtain a divorce he falsely testified as a witness in his own behalf upon the trial that he came to Reno, Washoe

County, Nevada, with the intention of making that place his bona fide home and domicile, when in truth and in fact his residence' in Washoe County was merely colorable, and was assumed for the sole purpose of procuring a divorce. In this connection it is alleged that the plaintiff, on coming to Nevada, left all his personal and real property, including money in banks, intact in the State of Pennsylvania, and brought with him only such personal effects as were necessary to satisfy his immediate wants during his temporary sojourn in Nevada; that during his stay in the city of Reno he lived at a hotel in company with his married daughter, who came with him from Pennsylvania to Nevada; that the plaintiff was 78 years of age; that upon obtaining his decree of divorce he immediately returned to his home domicile and residence in Pennsylvania, which he never abandoned, and had no intention of abandoning when he came to Reno for the purpose of obtaining a divorce, and where he now resides.

The plaintiff further alleged that as a part of the judgment for divorce it was adjudged that there was no community property, and that by virtue thereof the plaintiff was deprived of her dower interest in property of Nathan A. Confer, of the approximate value of $100,000. The complaint alleges that by reason of the false and fraudulent representations and the perjured testimony of the plaintiff the district court was without jurisdiction, for want of residence, to render the decree of divorce of July 18, 1923, and the plaintiff prayed judgment that said decree be vacated and annulled. Upon the filing of her complaint the plaintiff applied to the respondent court for an order that the service of the summons thereon be made by publication. The court refused to grant the order; hence this proceeding in mandamus.

2. Nathan A. Confer may have practiced a fraud upon the law and the court, but certainly not upon Emma E. Confer. She was not deceived by the allegation of residence, neither was she an innocent party. The plaintiff alleged the required residence to give the

court jurisdiction of the subject matter of the action. 9 California Jurisprudence, 694. The allegation of residence was denied by the defendant (petitioner), upon her information and belief. No one, except the plaintiff, knew better than the defendant, petitioner herein, whether the allegation was true or not. The obligation devolved upon her to give the court all the information which she now shows she possessed concerning the fact of the plaintiff's residence. Her present solicitude for the protection of the court's jurisdiction in the divorce action comes too late. The petitioner not being an innocent party, that numerous class of cases cited by her counsel wherein innocent parties, against whom courts without jurisdiction, for want of residence, have rendered decrees of divorce, were granted relief in both direct and collateral proceedings, are not in point.

It is argued on the part of petitioner that, where a judgment for divorce is obtained by fraud practiced upon the law and the court, it is the duty of the judge rendering the decree to promptly make such inquiry and finding as to the allegations of fraud as will protect and preserve the integrity of his decree, and this without reference to the relative rights of the parties. This is indeed a high-minded position to take, but, unfortunately, the fraud of which the petitioner complains was that practiced upon the court in an action to which she was a party and an actor.

3. The power of a court of equity to grant relief from a judgment obtained by fraud is inherent, but not every fraud committed in the course of a judicial determination will furnish ground for such relief. The acts for which a judgment or decree may be set aside or annulled have reference only to fraud which is extrinsic or collateral to the matter tried by the court, and not to fraud in the matter on which the judgment was rendered. 15 R. C. L. 762. The rule applies to a divorce action to the same extent, at least, as to any other judgment or decree. Clark v. Clark, 64 Mont. 386, 210 P. 93, and cases cited.

4. Assuming for the sake of the argument, and the

argument only, as was done by the court in the case of Clark v. Clark, supra, that the allegation in the complaint for divorce respecting residence was untrue, and that the plaintiff's testimony in support of it was false, we are confronted with the question whether the judgment for divorce should be set aside upon the sole ground that an allegation in the complaint necessary to support the judgment was proved by false testimony. We are of opinion that the fraud being in respect to the very matter on which the judgment for divorce was rendered the judgment under the rule stated cannot be set aside. Clark v. Clark, supra; Orr v. Orr, 144 P. 753, 146 P. 964. The required residence of the plaintiff in a divorce action is a jurisdictional fact, and must appear to warrant a divorce. The allegation of residence stands upon the same footing as any other allegation of fact showing the right to a divorce. Walker v. Walker, 45 Nev. 105, 198 P. 433; Blakeslee v. Blakeslee, 41 Nev. 243, 168 P. 950; Dahne v. Superior Court, 31 Cal. App. 664, 161 P. 280. The case of McKim v. District Court, 33 Nev. 44, 110 P. 4, is authority for the proposition that a question as to the sufficiency of the evidence to establish residence upon the part of the complainant in a divorce proceeding must be taken by appeal, and not by original proceeding.

We think that by the plainest principles of equity the petitioner is, under all the circumstances, precluded from maintaining her action to annul the decree of divorce upon the sole ground that the allegation in the complaint necessary to support the judgment was proved by false testimony. Her complaint does not, therefore, state a valid cause of action in equity, and for this reason we decline to compel the respondent judge to make an order directing that the summons issued upon such complaint be made by the publication thereof.

The proceeding is dismissed.

## ON PETITION FOR REHEARING

June 18, 1925.                                    236 P. 1097.

1. DIVORCE—DECREE GRANTED PLAINTIFF, RESIDING IN STATE FOR
   SIX MONTHS, NOT ANNULLED FOR FRAUD ON COURT'S JURIS-
   DICTION.
   Divorce decree obtained by plaintiff after six months' resi-
   dence in state, as required by statute, will not be annulled
   for fraud on jurisdiction of court, at suit of defendant who
   appeared in the action and had knowledge as to facts of resi-
   dence before decree.

2. DIVORCE—FINDINGS AS TO PLAINTIFF'S RESIDENCE CONCLUSIVE.
   Findings as to plaintiff's residence, which is jurisdictional
   fact in divorce action, are as conclusive as on any other fact
   issue in case.

3. DIVORCE—PLAINTIFF'S RETURN TO STATE OF FORMER RESIDENCE
   AFTER OBTAINING DIVORCE NOT GROUND FOR ANNULMENT.
   Statute requiring six months' residence to obtain divorce
   does not require that bona fide resident for such period before
   filing complaint reside in state for any specified time, and
   mere showing that he returned to state of former residence
   after obtaining divorce does not warrant annulment of decree,
   but is material only on question of intention to become resi-
   dent of county in which suit was brought.

See 19 C. J. sec. 414, p. 166, n. 20 (new) ; sec. 415, p. 167, n. 31
   (new) ; sec. 436, p. 175, n. 66.

