RENO PLUMBING & HEATING CO. Et Al. v.
BICKEL Et Al. (Tallman Et Al., Interveners)

RED RIVER LUMBER CO. v. CAPURRO Et Al.

No. 3028

August 31, 1934.                           35 P. (2d) 302.

*W. M. Kearney,* for Appellants, Ernest Capurro, B. Capurro, and Augustus Capurro:

*Thatcher & Woodburn, John Donovan, Leroy F. Pike* and *John Robb Clarke,* for Respondents, Reno Plumbing & Heating Company, W. H. Curtin, and Red River Lumber Company:

*John W. Burrows* and *Seward J. Parks,* for Intervening Respondents, W. G. Tallman and Alice C. Tallman:

**OPINION**

By the Court, SANDERS, C. J.:

These mechanic lien cases were consolidated and tried to the court without a jury. The validity of each claim of lien was established by the court's findings and conclusions, upon which each was adjudged to be a lien upon the land designated and described in the decree of foreclosure and order of sale as "The Mayberry Ranch situate about four miles west of Reno in Washoe County, Nevada, on the old Verdi Road." The cases

are here on appeal from said decree of foreclosure and from an order denying a new trial.

In May, 1929, the appellants, as copartners doing business under the firm name and style of B. Capurro & Sons, granted, demised, and leased unto Ralph Bickel for a term of two years the property described in the indenture of lease as follows: "That certain dwelling house known as the Sparks Mayberry Dwelling House on the Sparks Mayberry Ranch; also the small dwelling house on the same premises near the Mayberry Bridge Crossing, and the north part of barn and all other small outbuildings, except milk house, lying between the Truckee River and the Reno-Verdi Southside Highway and situate on the premises of lessors, together with the orchard ground near dwelling, reserving, however, the main center or hay space and the south half of the large barn situate on the said premises of lessors, together with the right of egress and ingress for the use and occupation of the same." The lease provided that all other portions and parts of said ranch property known as the Sparks Mayberry Ranch "are hereby expressly reserved from this lease."

The lessors knew that it was the intention of the lessee to use and operate the premises as a dude ranch and as a public place of amusement. The dwelling house was altered and modernized and two small cottages were constructed within the curtilage. The lessee failed in his venture and did not pay for the materials and labor furnished and used in the improvements on the premises. The claim of the Red River Lumber Company, a corporation, was for lumber furnished and used in the alteration of the dwelling house and the construction of said cottages. The claim of the Reno Plumbing & Heating Company, a corporation, was for materials and labor furnished for plumbing, heating, and sewerage. The claim of W. H. Curtin, coplaintiff of the Reno Plumbing & Heating Company, was for materials and labor furnished in painting the completed improvements. The claim of the Reno Tent and Awning Company as intervening plaintiff was for awnings

placed on the windows of the dwelling house. The lessors, within three days after having obtained knowledge of the intended plan of converting the leased premises into a place suitable for the purposes stated, did, on May 20, 1929, post a notice and file a duplicate thereof with the recorder of Washoe County of their nonliability for the intended improvements. The notice reads as follows:

"Notice: Notice is hereby given that the undersigned will not be responsible for the payment of any labor performed upon or material or supplies furnished for or used upon these premises known and described as follows:

"That certain dwelling house known as the Sparks-Mayberry dwelling house on the Sparks-Mayberry Ranch; also the small dwelling house on the same premises near the Mayberry bridge crossing, and all other smaller outbuildings lying between the Truckee River and the Reno-Verdi south side highway and situate on said premises, together with the large barn and the north half of the corral situate adjacent to and adjoining the said large barn, all in the S½ of SE¼ of Sec. 18, T. 19 N., R. 19 E., whether the said materials be used for the construction, alteration or repair or the intended construction, alteration or repair of buildings or other structures or otherwise upon the said premises, including labor performed thereon."

On May 20, 1929, the lessors posted duplicates of the original notice on the front of a small building situate about 125 or 130 feet from the rear portion of the main building or dwelling house and posted a notice on the fence surrounding the building at or near the point of ingress and egress to and from the back yard, and in addition posted the notice on a tree situate in the back yard near the place where material was delivered and fashioned into shape by workmen employed on the premises.

1, 2. The defense common to each claim of lien was the posting and filing of the duplicate of the original in the recorder's office. This defense involves the

application of the statutory rule of evidence to be found in section 9 of our mechanics' lien statute of 1875, as amended in 1917, Stats. 1917, 435, N. C. L., sec. 3743. The section as amended reads as follows: "Every building or other improvement mentioned in section 1 of this act, constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this chapter, unless such owner or person having or claiming an interest therein shall, within three days after he shall have obtained knowledge of the construction, alteration or repair, or the intended construction, alteration or repair, give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place upon said land, or upon the building or other improvement situate thereon, and also shall, within five days after such posting, file a duplicate original of such posted notice with the recorder of the county where said land or building is situated, together with an affidavit attached thereto showing such posting of the original notice. Such filing shall be prima facie evidence of said posting." The proof of the filing of the notice stands uncontradicted. When introduced and admitted in evidence, such filing was, under the statute, prima facie evidence of the fact of posting of the notices as required by the statute, and the burden of proof was cast upon the lien claimants to show that the notices were not posted and in addition were not posted in conformity to the requirements of the statute. Against the prima facie evidence of the posting of the notice and copies of the notice, the lien claimants, through their officers and representatives, and several of the workmen in and upon the buildings and other improvements, testified that they never saw either of the notices, thus controverting the prima facie evidence that the notice was posted in a conspicuous

place. On the other hand, one of the Capurros testified that he posted the notices, and another of the Capurros testified that he saw the notices, and three disinterested witnesses testified that they saw the notices while in place from some distance away, and read sufficient of the contents of the notices to enable them to testify as to their meaning and purpose.

The testimony of the lien claimants, being negative in character, is not so satisfactory nor convincing as the positive testimony of the Capurros, and their witnesses, who saw and observed the notices while in place. In Marshall v. Cardinell, 46 Or. 410, 80 P. 652, 653, a mechanics lien case, the writer of the opinion used this language: "The testimony of a person who asserts that he saw a thing is inherently stronger than that of another of equal veracity who says that he did not see it unless both were intent upon observing for a specific purpose and noting a condition." Here the Capurros posted the notices seen by the witnesses, who took note of them and were able to testify to the fact, while the witnesses for the lien claimants and the claimants themselves had an opportunity to see, but did not see, the notices. It is true that the notices were not posted upon the buildings under alteration and construction, but they were posted upon the land. There is nothing in the testimony of any of the witnesses from which this court might infer anything but good faith on the part of the owners in giving the notice and filing it for record. It seems hardly possible that the notices could have been posted in a more conspicuous place than those where they were posted, the place of ingress and egress to and from the premises, where they were seen and observed while in place. The testimony on the part of the appellants is that the notices were posted in places where those who furnished material and performed labor could see them while they were at work upon the main building and the construction of the cottages. In the case of Gaston v. Avansino, 39 Nev. 128, 154 P. 85, the court had under consideration the question of whether the giving and posting in writing

on the premises in a conspicuous place was a conspicuous place within the meaning of the statue. The substance of the decision on this issue was that the testimony of one claiming a lien for work performed upon a building, that he worked thereon, that at the time he looked for a notice signed by the owner that he would not be responsible for the repairs, and that there was no such notice at any time while he was doing the work, is not negative testimony such as may be disregarded in the face of positive testimony that the notice was posted. Not so in the present case. The lien claimants were corporations and had an equal opportunity with the witnesses for the owners of seeing the notices, but did not look for them. Neither of them went to the record for the purpose of ascertaining whether a notice was posted as required by law. It seems impossible to say that the posting was not sufficient to fulfill the requirements of the statute and to relieve the owners of the responsibility for the materials and labor furnished by the lien claimants to their lessee in the alteration and construction work done upon the buildings upon the land.

3. I am further of the opinion that the learned trial court erred in ordering the sale of the entire Mayberry ranch, when it appeared from the testimony, both oral and documentary, that the ranch was expressly excluded and only the main ranch building and curtilage was leased.

Being of the opinion that the lien claimants have failed to sustain the burden of proof cast upon them by the statute, and that the posting of the notices was sufficient to fulfill the requirements of the statute as to relieve the owners of the responsibility of liability for the construction of buildings and the alteration of the main ranch house and other improvements on the land, the decree of foreclosure and order of sale should be reversed.

DUCKER, J.: I concur.

COLEMAN, J.: I dissent.